**Mary BOWEN, Plaintiff,**

v.

**WOHL SHOE COMPANY, Defendant.**

**Civ. A. No. 73–H–1153.**

United States District Court,
S. D. Texas,
Houston Division.

Feb. 20, 1975.

Thomas Osa Harris, Houston, Tex., for plaintiff.

Harry M. Reasoner, Houston, Tex. (Vinson, Elkins, Searls, Connally & Smith, Houston, Tex.) Veryl L. Riddle, St. Louis, Mo. (Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo.), for defendant.

## MEMORANDUM AND OPINION

CARL O. BUE, Jr., District Judge.

Plaintiff alleges wrongful discharge from employment by her employer in violation of state law and of the federal antitrust laws. The defendant has moved for summary judgment on Counts One and Three of plaintiff's Amended Complaint (the state law claims) and has moved to dismiss Count Two (the antitrust claim) for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), Fed.R.Civ.P. The facts upon which the three counts are based flow from one set of events. The material facts pertinent to Counts One and Three are substantially undisputed, and summary treatment is appropriate for these counts. Defendant's motion for summary judgment as to Count One is granted. Defendant's motion for summary judgment as to Count Three is granted in part.

The antitrust claim raised by Count Two presents a question of first impression in this Circuit.[1] Additional evidence has been made available to the Court beyond the bare pleadings, and the Court therefore has treated defendant's motion to dismiss Count Two as a motion for summary judgment, pursuant to the last sentence of Rule 12(b)(6). Viewed in a light most favorable to plaintiff as the party opposing summary judgment, the facts now before the Court indicate that plaintiff's complaint does state an antitrust claim upon which relief can be granted. However, the available facts have proved insufficient to permit the Court to resolve the legal issues raised by Count Two. Further development of the evidence will be necessary before summary treatment can be considered appropriate for Count Two.

## I. FACTS[2]

Plaintiff was formerly an employee of defendant and was the manager of the children's shoe department at the Foley Bros. store in the Almeda Shopping Mall in Houston, Texas. Defendant operated this department through a lease and concession arrangement with Foley Bros. While employed with defendant, plaintiff funded the creation and establishment of a company to operate a shoe store in Conroe, Texas, the residence of plaintiff, located approximately 55 miles from defendant's store. Orthopedic shoes for children were sold at the store, apparently the only outlet for such shoes in the Conroe area. Other types of shoes were also carried. Plaintiff invested money in the store because she desired supplemental income for her retirement. *See* Deposition of Plaintiff at 25–36 and 83 (May 8, 1974).

Plaintiff commenced her employment with defendant in either January or November, 1953,[3] and was continuously employed by defendant, with one exception not important for purposes of this suit, until the time of her discharge in October, 1972. She was apparently a loyal employee, and there is no indication whatever that her work record at any time was less than commendable and satisfactory.

As the result of her establishment of, and participation in, the operations of the Conroe store, plaintiff began to have difficulties with her supervisors, including several executives of defendant in the Houston area and ultimately executives of the defendant in the home office

---

1. *Cf.* Alders v. AFA Corporation of Florida, 353 F.Supp. 654 (S.D.Fla.1973), aff'd without written opinion, 490 F.2d 990 (5th Cir. 1974).

2. The following statement of facts is not presented in a light most favorable to plaintiff, but rather represents all undisputed facts available in the pleadings and affidavits together with plaintiff's presentation of disputed or unproven facts.

3. The exact starting date of plaintiff's employment is not clear from the affidavits and documents available. *See* n. 6, *infra.*

in St. Louis, Missouri. Conflicting comments were made to her regarding the consequences of her maintaining the Conroe operation insofar as her employment with defendant was concerned. Plaintiff persisted in maintaining the Conroe store until she realized that this position might jeopardize her continued employment with defendant. While continuing to believe that operation of a children's orthopedic shoe store in the Conroe area was financially a sound investment, plaintiff evidenced a willingness to sell the store in order not to jeopardize her employment with defendant. *See* Deposition of Plaintiff at 52–53 (May 8, 1974).

Ultimately, plaintiff's maintenance of the Conroe operation resulted in the loss of her job with defendant. Defendant's policy [4] regarding the Conroe store was finally expressed in no uncertain terms to plaintiff in September and early October of 1972, when the president of defendant, Ben Peck of the St. Louis home office, informed plaintiff by letter of his regret that plaintiff had "now made the final decision to leave the company". *See* Defendant's Exhibit No. 2, Letter from Ben Peck to Plaintiff, September 28, 1972. Mr. Peck went on to say: "I had high hopes that the long discussion we had this past Sunday afternoon would lead to your continuing your many long years of wonderful relationship with Wohl Shoe Company." *Id.*

Plaintiff interpreted this letter as an indication that defendant had terminated her employment, not that she had chosen to resign, which she represents that she certainly did not intend to do. She responded accordingly in a letter to Mr. Peck on October 4, 1972. *See* Defendant's Exhibit No. 3, Letter from Plaintiff to Defendant's President, October 4, 1972. In this letter, plaintiff emphasized that she was not choosing to be terminated by the company; indeed, she stated that she could not understand why she was being "fired" from the

company. Rather, she emphasized that she wanted to invest in the Conroe store to add income to her retirement savings, that the Conroe store "does not compete" with the Almeda Mall store of defendant, but that in any event, plaintiff was making an effort to sell the Conroe store "upon terms that would permit the present Conroe personnel to continue their employment". *Id.* Plaintiff also emphasized that she very much wanted to continue her longstanding relationship with defendant, but that if she could not, she desired severance pay and retirement benefits to which she considered herself entitled.

Mr. Peck responded to this letter on October 9. *See* Defendant's Exhibit No. 4, October 9, 1972. He stated that plaintiff was unjustified in feeling that she had been terminated from employment by the company. Rather, Mr. Peck characterized the severing of her employment as being occasioned

> by your own decision that you wish to continue your ownership interest in the Conroe shoe store, an interest which we have told you is inherently inconsistent and incompatible with your continued employment in the retail division of Wohl Shoe Company.

*See* Defendant's Exhibit No. 4 at 1. Mr. Peck went on to state that

> *as a matter of company policy*—which we have enforced consistently throughout our retail organization for a long, long time—*we cannot allow such a duality of interests* to continue; therefore, we have had to ask you to *make your election as to whether you wished to continue with us, or with the Conroe store.* Since you have chosen the latter course, that choice has effectively resulted in your own voluntary determination to leave your former employment with us. We sincerely regret that decision on your part, but it is one we have no choice but to recognize in the circumstances. (Emphasis added)

---

4. There is some suggestion that the Foley's Almeda Mall store also had a policy which was involved. *See* Deposition of Plaintiff at 53–54 (May 8, 1974).

*Id.* Mr. Peck then went on to state that the plaintiff would receive all of the employment benefits to which she was entitled, including Retirement Trust benefits. *Id.*

Subsequently, plaintiff has attempted to seek other employment and has filed with the Texas Employment Commission, *see* Defendant's Exhibit No. 1, Application for Employment with the Texas Employment Commission, October 17, 1972, but has had no success as of the time her suit was filed in finding new employment. She apparently continues to operate the Conroe store.

## II. PLAINTIFF'S ALLEGATIONS

Because of these events, plaintiff filed this suit, alleging three counts as grounds for recovery. *See* Plaintiff's First Amended Complaint, June 7, 1974. Count One alleges wrongful discharge of plaintiff by defendant; Count Two alleges violation of the antitrust laws by defendant, specifically, Section 1 of the Sherman Act, 15 U.S.C. § 1, and the antitrust laws of Texas, Tex. Bus & Comm. Code §§ 15.02–15.04, V.T.C.A., wherein defendant allegedly unlawfully restrained trade. Count Three alleges wrongful deprivation of pension rights. Plaintiff further contends that damages should be awarded in the amount of $442,600.[5]

Defendant has moved for summary judgment as to Counts One and Three and has moved to dismiss the claims under Count Two pursuant to Rule 12(b)(6), Fed.R.Civ.P., contending that the antitrust allegation fails to state a claim upon which relief can be granted. Since Counts One and Three present questions of state law, they will be considered first.

## III. COUNT ONE

Defendant contends that the employment agreement between it and plaintiff was oral, not written, and that Texas law, which should be applicable to this count under diversity jurisdiction principles, permits discharge of an employee at will when an oral employment agreement is in effect. Defendant bolsters this argument by contending that since an employment agreement is in effect which could last longer than one year, the agreement would have to be in writing to be enforceable, under the Texas Statute of Frauds, Tex.Bus. & Comm. Code § 26.01. Since there was no writing between defendant and plaintiff, according to defendant, plaintiff's claim is barred by the Statute of Frauds.

Plaintiff responds to this by contending that letters were sent by defendant's president indicating defendant's desire to keep plaintiff as an employee for some period of time probably longer than a year, and that the claim is therefore not barred by the statute of frauds since the employment agreement is evidenced by some written document.

This Court agrees that Texas law controls this question. After considering the available documents, especially plaintiff's description in her deposition of the kind of employment relationship she had with defendant, *see* Deposition of Plaintiff at 17–18 and 20 (May 8, 1974), this Court concludes that under Texas law the employment agreement between plaintiff and defendant was an oral one. Therefore, defendant could

---

5. Plaintiff's damage figure was computed according to the following formula:

(a) Plaintiff was 52 years of age at the time of her termination of employment earning a salary of $9,620 annually, with an excellent employment record;

(b) Plaintiff could reasonably have anticipated that she would have continued to earn at least that figure with accompanying increases in contributions to the retirement fund until she reached the age of 62, but for the alleged wrongful termination;

(c) That therefore plaintiff is entitled to $96,200 lost wages ($9,620 per year times 10 years) plus approximately $18,000 in lost retirement benefits during that time;

(d) That this damage figure, $114,200 ($96,200 plus $18,000) should be trebled in accordance with the antitrust provision for treble damages, 15 U.S.C. § 15, resulting in total damages of $442,600 ($114,200 x 3).

discharge plaintiff at will, with or without cause. NHA, Inc. v. Jones, 500 S. W.2d 940 (Tex.Civ.App.—Ft. Worth 1973, writ ref'd n. r. e.); Scruggs v. George A. Hormel & Co., 464 S.W.2d 730 (Tex.Civ.App.—Dallas 1971, writ ref'd n. r. e.). Accordingly, defendant's motion as to Count One is granted. Summary judgment is awarded in favor of defendant as to Count One, and plaintiff's Count One claim is dismissed.

## IV. COUNT THREE

■ Since plaintiff's claim for wrongful discharge must be dismissed, plaintiff is not entitled to recover under state law for future pension rights allegedly wrongfully deprived. However, this Court cannot accept the contention of defendant that no valid agreement existed between it and plaintiff so as to deprive plaintiff of previously vested pension benefits because the employment agreement was not in writing. An employment contract providing for an indefinite term of service is not invalid, even though it can be terminated at will by either party. NHA, Inc. v. Jones, 500 S.W.2d 940 (Tex.Civ.App.—Ft. Worth 1973, writ ref'd n. r. e.).

■ Therefore, plaintiff is entitled, under state law, to the full amount of her share of pension benefits paid into the Retirement Trust program of defendant up to the date of her termination. However, the amount of this share cannot be determined on the basis of the information now available to the Court, and so must be resolved after additional appropriate evidence is submitted. Particularly, the Court is unable to resolve the following questions: the precise length of time plaintiff served with the defendant company;[6] whether this time period has been agreed upon by the parties;[7] the total amount due plaintiff under a formula considering both periods of service that are suggested; and whether the amount which has been paid to plaintiff[8] constitutes full satisfaction of her pension claims.

## V. COUNT TWO: SHERMAN ACT VIOLATIONS

Defendant has moved to dismiss plaintiff's Sherman Act claim[9] under Rule 12(b)(6), Fed.R.Civ.P. In support of this motion, defendant first asserts that plaintiff has no standing to bring this Sherman Act claim. See Reply Memorandum in Support of Defendant's Motions for Summary Judgment and to Dismiss (August 5, 1974). Defendant then contends that plaintiff has not stated a claim under the Sherman Act: the Sherman Act discusses only restraint of competition, and plaintiff has specifically emphasized that her Conroe shoe store does not compete with defendant's store; the Sherman Act is only applicable to a contract, combination or conspiracy in restraint of trade, and no such contract, combination or conspiracy existed in this case because only defendant's unilateral conduct was involved. See Memorandum in Support of Defend-

---

6. Plaintiff contends that she began employment with defendant in January, 1953, and that her length of service should be considered to be 20 years. Defendant contends that plaintiff began her employment in November, 1953, and that her length of service is 19 years. See Deposition of Plaintiff at 85–86 (May 8, 1974).

7. There is some indication that this dispute has been settled by the parties. See Deposition of Plaintiff at 85–86 (May 8, 1974). Should there be no dispute, the Court should be so advised.

8. Plaintiff has apparently received some money. See Deposition of Plaintiff at 76 (May 8, 1974).

9. In her first amended complaint, plaintiff alleged violation of the antitrust laws of the United States and of Texas. 15 U.S.C. § 1; Tex.Bus. & Comm.Code §§ 15.02–15.04. However, plaintiff has subsequently abandoned argument on the state antitrust claim. See Plaintiff's Supplemental Memorandum Opposing the Motions for Summary Judgment and to Dismiss at 5 (August 13, 1974). Therefore, this claim must be dismissed and is not considered by the Court in this opinion.

ant's Motions for Summary Judgment and to Dismiss at 5–6 (July 16, 1974).

Matters outside the pleadings have been made available to the Court. The last sentence of Fed.R.Civ.P. 12(b)(6) permits this Court to determine whether any issue of genuine fact exists, and if it finds none, it must proceed to decide the questions of law involved. The Court concludes on the facts now before it that plaintiff's complaint does state a claim and that the Court is unable on the basis of the existing record to resolve the merits of the claim summarily.

## A. Standing

■■ The antitrust laws impose a threshold statutory standing requirement on antitrust plaintiffs.[10] Therefore, the instant plaintiff must allege injury to her business or property and must additionally demonstrate that she was "directly injured", or in the "target area" of the effect reasonably foreseeable from the allegedly illegal conduct.[11] The gist of this requirement is that a private antitrust plaintiff may not complain of the existence of a Sherman Act violation in the abstract. Gray v. Shell Oil Co., 469 F.2d 742 (9th Cir. 1972), cert. denied, 412 U.S. 943, 93 S.Ct. 2773, 37 L.Ed.2d 403 (1973).

■ The Supreme Court has specifically held that the phrase "business or property", as that phrase is used in 15 U.S.C. § 15, refers to commercial interests or enterprises. Hawaii v. Standard Oil Co., 405 U.S. 251, 264, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972); cf. North Texas Producers Assoc. v. Young, 308 F.2d 235 (5th Cir. 1962), cert. denied, 372 U.S. 929, 83 S.Ct. 874, 9 L.Ed.2d 733 (1963). Plaintiff's Conroe store qualifies as such an interest or enterprise.[12]

This Court further concludes that defendant's conduct was "directed at" plaintiff or, alternatively that the actions of defendant were those whose effect would foreseeably affect plaintiff as one in the "target area". See Radovich v. National Football League, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957). To this Court, plaintiff's employment was clearly terminated by defendant for her operation of the Conroe store. Defendant's termination of the plaintiff was the end result of its volitional move either to have plaintiff give up the Conroe store or lose her job. See Defendant's Exhibit No. 4, Letter from Ben Peck to Plaintiff (October 9, 1972), quoted on page 575, supra. With all the economic controls at its command, defendant could effectively dictate plaintiff's employment as well as the direction of commerce in orthopedic shoes in the Conroe area.

Defendant challenges plaintiff's standing because of her status as an employee. Defendant strongly contends that this plaintiff could have no standing when her employment was terminated because her employment involved no separately cognizable sales territories or commissions, and her only loss was of a salaried position. See Reply Memorandum in Support of Defendant's Motion for Summary Judgment and to Dismiss at 9 (August 5, 1974).

Defendant's contention misapprehends the thrust of plaintiff's claim as amplified in her deposition. Plaintiff's oper-

---

10. "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States . . . ." 15 U.S.C. § 15.

11. For an excellent recitation of the components of this additional requirement, see In Re Multidistrict Vehicle Air Pollution M.D. L. No. 31, 481 F.2d 122, 126–28 (9th Cir. 1973).

12. Plaintiff also satisfies the collateral requirements of standing: that plaintiff has an intention to enter into a business; and that plaintiff is prepared to enter into a business. North Texas Producers Ass'n v. Young, supra. Not only has the instant plaintiff taken affirmative action to enter into the shoe-selling business, she has already made such an entry by opening the Conroe store. This entry, coupled with plaintiff's long experience in shoe store management and operation and her accompanying expertise, well-qualifies her to have standing. See Deposition of Plaintiff at 25–37 (May 8, 1974).

ation of the Conroe store removes her from among jobless plaintiffs who are deprived by virtue of employment termination of promoting their employer's market territories through unique control of these territories, and who have standing, therefore, because of their "employment" status[13] and relocates her among that class of potential antitrust litigants who are trying to enter, or who have successfully entered, the industry, and therefore have standing because of their "entrepreneurial" status. *See, e. g.,* North Texas Producers Assoc. v. Young, *supra,* 308 F.2d 235; *cf.* Martin v. Phillips Petroleum Co., 365 F.2d 629 (5th Cir. 1966).[14]

The so-called "employee" cases, *see* note 13, *supra,* do play a role in this case, however. Language in the "employee" cases speaks broadly of the presence of an injury to business or property as the result of loss of employment. The United States Court of Appeals for the Fifth Circuit has utilized such language in the *Dailey* case. 380 F.2d at 487. Further, the *Radovich* case has been interpreted to provide an antitrust cause of action to a person who lost his employment (and was no longer able to practice his profession) as the result of a "boycott" or "blackballing" by his employer in violation of the antitrust laws. *See* Reibert v. Atlantic Richfield Co., 471 F.2d 727, 730 (10th Cir.), cert. denied, 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 399 (1973).

Plaintiff's "entrepreneurial" status, rather than her "employee" status, causes the Court to conclude that she has standing to allege an antitrust claim. Still, her loss of salary and other employee benefits remain in the case as an element of possible damages recoverable, should violations of the antitrust laws be proved. *See, e. g.,* Vandervelde v. Put & Call Brokers & Dealers Assoc., 344 F.Supp. 118 (S.D.N.Y.1972) (salary or commissions lost as result of antitrust violation held recoverable as damages).

## B. Statement of An Antitrust Claim

### 1. Restraint of Trade and the Rule of Reason

The simple wording of Section 1 of the Sherman Act is deceptive. A literal interpretation of the section would dictate that any commercial transaction, contract, combination or business conspiracy could be deemed to violate it. United States v. Topco Associates, 405 U.S. 596, 606, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972). As the Supreme Court recognized in the *Topco* case, the Congress did not intend to prohibit all such contracts, or even all contracts that might in some insignificant degree or attenuated sense restrain trade or competition. As a consequence, the Supreme Court has developed a "rule of reason" analysis for Section 1 cases.[15] *See* Standard

---

13. *See* Dailey v. Quality School Plan, Inc., 380 F.2d 484, 487 (5th Cir. 1967); Nichols v. Spencer International Press, Inc., 371 F.2d 332 (7th Cir. 1967); Roseland v. Phister Mfg. Co., 125 F.2d 417 (7th Cir. 1942); *cf.* United States v. National Assoc. of Real Estate Boards, 339 U.S. 485, 70 S.Ct. 711, 94 L.Ed. 1007 (1950).

14. The proper distinction to this Court does not appear to be injury to salary as compared with injury to assigned sales territories and commission. Rather, injury to business or property that belongs to the corporation in which the employee's claim is derivative should be compared with injury to property that is directly attributable to the employee in which the corporation asserts an adverse interest.

15. "Rule of reason" analysis is appropriate in this case because the complained of activity has not been held *per se* violative of Section 1.

The following restraints of trade have been deemed to be *per se* illegal: (a) horizontal price fixing, United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); (b) resale price maintenance, Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911); (c) division of markets, United States v. Arnold, Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967); (d) group boycotts, Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); (e) tying arrangements, International Salt

Oil Co. v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). Thus, certain business actions "restrain trade" if they unduly restrict competition or obstruct the due course of trade, primarily restricting or suppressing commercial competition unreasonably. Northern Pacific Ry. v. United States, 356 U. S. 1, 4–5, 78 S.Ct. 514, 2 L.Ed.2d 545 (1956); Apex Hosiery Co. v. Leader, 310 U.S. 469, 495, 500, 60 S.Ct. 982, 84 L.Ed. 1311 (1939).

### 2. Sufficiency of Plaintiff's Complaint

 The sufficiency of an antitrust complaint is tested by determining whether it is "wholly frivolous." Radovich v. National Football League, *supra*, 352 U.S. at 453, 77 S.Ct. 390. The complaint should not be dismissed for failure to state a claim unless "nothing can be extracted from [the complaint] that falls under the Act of Congress." *Id.* The claim should merely be tested under the Sherman Act's general prohibition as to unreasonable restraints of trade and meet the further requirement that petitioner has thereby suffered injury. *Id.*, Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 73 S. Ct. 872, 97 L.Ed. 1277 (1953).

 Plaintiff has standing to bring this claim because of her "entrepreneurial" status. Her claim is inartfully pleaded, alleging only that defendant's alleged coercive conduct in imposing and then carrying out the restrictive aspects of the employment agreement "unrea-

sonably restrained plaintiff in her employment and her investment practices." *See* Plaintiff's First Amended Complaint at 2, Count Two (June 7, 1974). As such, the complaint only tangentially alleges unreasonable conduct injurious to competition.

However, as the Court noted previously, *see* page 1, *supra*, additional pleadings and information have been made available to the Court which amplify the contents of the complaint. *See* Deposition of Plaintiff (May 8, 1974); Plaintiff's Opposition to Defendant's Motion for Summary Judgment and to Dismiss (July 26, 1974); Plaintiff's Supplemental Memorandum Opposing the Motions for Summary Judgment and to Dismiss (August 13, 1974). The additional information indicates that plaintiff's complaint does possibly state a claim. Sufficient facts have not yet been presented, however, to permit favorable summary resolution of legal issues, either in favor of plaintiff or defendant.

 Expansion of plaintiff's claim to include the additional available information does not fully rectify the semantic inadequacies of plaintiff's complaint. She is still contending that "defendant restrained trade by imposing upon plaintiff a choice of loss of employment or loss of investment and that under the circumstances, the restraint was unreasonable." *See* Plaintiff's Supplemental Memorandum Opposing the Motions for Summary Judgment and to Dismiss, ¶ II.A.2 at 5 (August 13, 1974).[16] And

Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947); Fortner Enterprises, Inc. v. U. S. Steel Corp., 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969); and (f) reciprocal dealing, United States v. Griffith, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236 (1948).

16. Defendant's employment policy amounts to a "present" restrictive covenant not to compete; i. e., a covenant between an employer and current employees. Such covenants, which usually involve restrictions on an employee's post-employment activities, have received little attention in federal antitrust actions because of the localized nature of such controversies and their apparently successful

regulation, where appropriate, by state antitrust laws. *See, e. g.*, Tex.Bus. & Comm. Code §§ 15.02–15.04. *See generally*, Goldschmid, Antitrust's Neglected Stepchild: A Proposal for Dealing With Restrictive Covenants Under Federal Law, 73 Colum.L.Rev. 1193 (1973); Annotation, Enforceability, Insofar as Restrictions Would Be Reasonable, of Contract Containing Unreasonable Restrictions on Competition, 61 A.L.R.3d 397 (1975); Annotation, Enforceability of Restrictive Covenant, Ancillary to Employment Contract, as Affected by Territorial Extent of Restriction, 43 A.L.R.2d 94 (1953). *Cf.* Annotation, Validity Under the Federal Antitrust Laws (15 U.S.C. §§ 1 et seq.), of Agreements Between Employers or Employ-

defendant is contesting the presence of any Sherman Act violation because plaintiff's Conroe store is allegedly not in competition with defendant's Almeda Mall store.

■ However, coupled with the allegation of unreasonable restraint on plaintiff is the additional contention that defendant's discharge policy unreasonably restrained trade by injuring shoe store competition in Conroe. *Id.* at 3. That is, it is urged that plaintiff's lost salary has possibly caused the Conroe operation to suffer from diminished available capital, resulting in the possible decline of competition and of the passage of unique goods sold at the Conroe store from the mainstream of commerce in that area.[17] Plaintiff further suggests that trade has been unreasonably restrained as to orthopedic children's shoes because her store is allegedly the sole supplier of such shoes in Conroe. *See* Deposition of Plaintiff at 89 (May 8, 1974).

### 3. CONTRACT, COMBINATION OR CONSPIRACY IN RESTRAINT OF TRADE

Defendant characterizes the complained of employment termination as "unilateral conduct" by it. Defendant then takes the position that such conduct is not cognizable under a Section 1 claim of unreasonable restraint of trade because of the absence of a contract, combination or conspiracy to so restrain trade.

■ The Court is not wholly persuaded by this contention. A combination or contract to restrain trade can oc-

cur if two parties are participants, even if the agreement will benefit only one party. United States v. Parke, Davis & Co., 362 U.S. 29, 44, 80 S.Ct. 503, 4 L. Ed.2d 505 (1960). The *Parke, Davis* case involved resale price maintenance. Manufacturers who were found to have violated the antitrust laws had coerced retailers to maintain a certain price level on the manufacturers' goods by suggestion through threats of termination. Though the Supreme Court found the combination to be highly detrimental to the retail entities, the Court held that acquiescence in the illegal scheme was sufficient to establish a "combination". *Id.* The Court later reaffirmed this view of the definition of "combination". *See* Albrecht v. The Herald Co., 390 U.S. 145, 149, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968) (termination of exclusive distributorship of newspaper routes by the newspaper publisher constitutes illegal combination between publisher and newspaper carrier). The attempt by defendant to enforce a policy against plaintiff regarding the Conroe store thus conceivably qualifies as a "combination" or "contract" potentially violative of Section 1. At least, at this stage such a possibility cannot be excluded. The alleged attempt of Foley Bros. and defendant together to force plaintiff to relinquish the Conroe store also potentially qualifies. *See* note 4, *supra.*

To the Court, the allegation of these injuries by the plaintiff sufficiently states a claim under the law, inasmuch as the claim cannot be viewed as wholly frivolous under the *Radovich* test, *supra.* Defendant's actions which resulted in the termination of plaintiff's employ-

er Associations Imposing Restrictions on Employment, 2 A.L.R.Fed. 839 (1969).

In Texas, the validity of a restrictive covenant depends upon its reasonableness as to duration and area. *Compare* Martin v. Kidde Sales & Service, Inc., 496 S.W.2d 714 (Tex.Civ.App.—Waco 1973, no writ) with T. E. Moor & Co. v. Hardcastle, 421 S.W.2d 126 (Tex.Civ.App.—Beaumont 1967, writ ref'd n. r. e.).

17. The rather limited nature of trade allegedly involved in this case does not detract

from the significance of plaintiff's claim. Radiant Burners, Inc. v. Peoples Gas Light & Coke Co., 364 U.S. 656, 660, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961). Wholly local business restraints can produce effects condemned by the Sherman Act. United States v. Employing Plasterers Assoc., 347 U.S. 186, 189, 74 S.Ct. 452, 98 L.Ed. 618 (1954). The Sherman Act reaches as far as the commerce clause will allow. United States v. Topco Associates, 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972).

ment could interfere with, or affect, interstate commerce unreasonably in restraint of trade as contemplated by the Congress. *See* A. Cherney Disposal Co. v. Chicago & Sub. Refuse Dist. Assoc., 484 F.2d 751, 758 (7th Cir. 1973), cert. denied, 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974).

The Court has been unable to find any reported decision wherein a plaintiff has challenged as violative of the Sherman Act a termination of employment for operating an independent, allegedly noncompeting, commercial enterprise. *See* note 16, *supra.* Therefore, to avoid premature adjudication of the potentially significant antitrust question presented regarding the validity of the instant restrictive employment agreement, the Court advances certain guidelines to facilitate thorough development of additional pertinent evidence by the parties.

### C. Burden on the Parties

█ Plaintiff's successful statement of a claim does not relieve her of other burdens as an antitrust plaintiff. To prevail on the merits, she must establish that a violation of the antitrust laws has in fact occurred, that the illegal conduct charged actually caused a business or property injury, and that the injury suffered is measurable in dollars. *See* Antitrust Developments: 1955–1968, at 279 [Supplement to Report of the Attorney General's National Committee to Study the Antitrust Laws, 1955].

First, it must be determined whether the defendant's policy restrains trade, and whether Foley Bros. is involved in administering this policy, or a like policy, in conjunction with defendant. This requires ascertaining whether plaintiff's Conroe store competes with defendant's Almeda Mall operation. If only the Conroe market is involved, there must still be a determination whether, and the extent to which, plaintiff's Conroe store competes with other Conroe shoe stores, whether trade was impeded at plaintiff's Conroe store, and, if so, whether impeding trade at plaintiff's Conroe store substantially affects available goods in the Conroe area.

█ Second, given the existence of some restraint, the reasonableness of this restraint must be evaluated against the goal of protecting competition sought to be promoted by the Sherman Act. Analyzing the reasonableness of particular restraints includes consideration of the facts peculiar to the business in which the restraint is applied, the nature of the restraint and its effects, and the history of the restraint and the reasons for its adoption. United States v. Topco Associates, *supra.*

The parties should concentrate on demonstrating by use of statistical and other proof, whether defendant's actions constituted an "unreasonable" restraint of trade. Both parties are therefore directed to pursue appropriate discovery and ultimately to prepare supporting memoranda to demonstrate the relationship of such proof to the legal criteria outlined in this order. Counsel should also confer concerning the appropriate method for computing damages, should antitrust liability be found.

### CONCLUSION

By this Memorandum and Opinion, the Court has granted defendant's motion for summary judgment as to Count One of plaintiff's complaint and has granted in part defendant's motion for summary judgment as to Count Three. The development of facts beyond the bare pleadings has prompted the Court to treat defendant's motion to dismiss under Rule 12(b)(6) as a motion for summary judgment. On this basis, the Court concludes that plaintiff's complaint does state a claim upon which relief can be granted, and that summary judgment is not proper at this time because certain pertinent factual areas remain unresolved and at issue.