George Henson MIREE et al.,
Plaintiffs-Appellants,

v.

UNITED STATES of America and
DeKalb County, Georgia, et al.,
Defendants-Appellees.

Judith Anita PHILLIPS,
Plaintiff-Appellant,

v.

UNITED STATES of America and
DeKalb County, Georgia, et al.,
Defendants-Appellees.

William Michael FIELDS,
Plaintiff-Appellant,

v.

UNITED STATES of America and
DeKalb County, Georgia, et al.,
Defendants-Appellees.

FIREMAN'S FUND INSURANCE
COMPANY, Plaintiff-Appellant,

v.

UNITED STATES of America and
DeKalb County, Georgia, et al.,
Defendants-Appellees.

Mrs. Pearlie CHAISSON,
Plaintiff-Appellant,

v.

SOUTHEAST MACHINERY, INC.,
Defendant and Third-Party
Plaintiff-Appellant,

v.

UNITED STATES of America and De-
Kalb County, Georgia, et al., Third-
Party Defendants-Appellees.

Nos. 74-3670, 74-3822, 74-3864,
74-3870 and 74-3881.

United States Court of Appeals,
Fifth Circuit.

Jan. 10, 1978.

Hugh M. Dorsey, Jr., Jule W. Felton, Jr., Atlanta, Ga., Gilbert E. Johnston, Alan W. Heldman, Birmingham, Ala., for plaintiffs-appellants.

John W. Stokes, U. S. Atty., Atlanta, Ga., for U.S.A.

George M. Fleming, Trial Atty., U. S. Dept. of Justice, Morton Hollander, Ronald R. Glancz, Washington, D. C., Meade Burns, F. Clay Bush, Atlanta, Ga., for DeKalb.

J. Arthur Mozley, Atlanta, Ga., for S. E. Machinery.

Baxter H. Finch, Robert W. Patrick, Atlanta, Ga., Herbert S. Falk, Jr., Greensboro, N. C., for defendants-appellees.

A. Russell Blank, Baxter H. Finch, Atlanta, Ga., for plaintiff-appellant.

Wendell K. Willard, Decatur, Ga., for De-Kalb County.

William D. Mallard, Jr., Asst. U. S. Atty., Atlanta, Ga., for defendants-appellees.

Robert M. Travis, William Q. Bird, Atlanta, Ga., for plaintiff-appellant.

Robert Stringer, Decatur, Ga., for third-party defendants-appellees.

Before GODBOLD, DYER and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Pursuant to Georgia Code § 24-3902,* which authorizes certification of state law

* Section 24-3902 states:
Supreme Court authorized to receive and answer certificates as to State law from Federal appellate courts.—The Supreme Court of this State may, by rule of court, provide that, when it shall appear to the Supreme Court of the United States, to any Circuit Court of Appeals of the United States, or to the Court of Appeals of the District of Columbia that there are involved in any proceeding before it questions or propositions of the laws of this State, which are determinative of the said cause, and there are no clear controlling precedents in the decisions of the Supreme Court of this State, such Federal Appellate Court may certify such questions or propositions of the laws of this State to the Supreme Court of this State for instructions concerning such questions or propositions of State law, which certificate the Supreme Court of this State, by written opinion, may answer. Provided, however, that the Court of Appeals shall not have jurisdiction to consider any question certified under this Section by transfer of otherwise.

questions from the federal appellate courts to the Georgia Supreme Court, we certify this case to the Georgia Supreme Court. The following appendix, submitted by the parties, is a joint statement of facts and of certified questions to be proposed to the Georgia court. We adopt this joint statement.

The entire record in this case, the court's opinion, together with copies of the briefs of the parties, the letter directive, the proposed questions and statement of facts and all of the papers are transmitted herewith.

CERTIFIED.

## JOINT PROPOSED STATEMENT OF FACTS

On February 26, 1973 a Lear Jet crashed shortly after take-off from the DeKalb Peachtree Airport. The alleged cause of the crash was the ingestion of a large number of birds swarming over the airport and adjacent county garbage dump. Damage was substantial; all passengers were killed; the plane was destroyed; an individual on the ground was severely injured by burning jet fuel that fell from the disabled plane shortly before crashing; and property at the crash site was damaged. Separate actions were brought in the United States District Court for the Northern District of Georgia, Atlanta Division, by the survivors of occupants of the airplane, the burned victim, the insurer of the owner of the plane, and the owner of the property at the crash site. The various plaintiffs brought suit against DeKalb County, Georgia and the United States of America, asserting theories of negligence, nuisance and breach of contract. Defendant DeKalb County moved to dismiss on the grounds that it was immune from suit under Georgia law. The County's motion was granted and the plaintiffs appealed to the United States Court of Appeals for the Fifth Circuit.

The initial opinion of the Fifth Circuit Court of Appeals is reported at 526 F.2d 679 (affirming in part and reserving in part); the en banc opinion of the Fifth Circuit Court of Appeals is reported at 538 F.2d 643 (reversing the initial panel decision in part and affirming the District Court); and the opinion of the United States Supreme Court is reported at 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (vacating the en banc decision). On remand from the Supreme Court, the Fifth Circuit Court of Appeals ordered the questions involved certified to the Georgia Supreme Court.

The plaintiffs allege that the Federal Aviation Administration and the United States of America entered into a series of Grant Agreement with DeKalb County, Georgia. In such Agreements DeKalb County was the "Sponsor", and in return for the Sponsor's assurances the United States of America granted funds to DeKalb County for various uses at DeKalb Peachtree Airport, including the construction of the jet runway involved in this litigation. It was alleged that the defendant DeKalb County, prior to the crash of the Lear Jet airplane, maintained a garbage dump at its airport facility adjacent to said jet runway, and that the existence of the garbage dump with its contents attracted immense flocks of birds, all of which plaintiffs contend constituted an airport hazard.

In the series of Grant Agreements DeKalb County, as Sponsor, agreed with the United States in part as follows:

"(1) . . . These covenants shall remain in full force and effect throughout the useful life of the facilities developed under this Project, . . .

"(2) The Sponsor will operate the Airport as such for the use and benefit of the public. . . . That the Sponsor may prohibit or limit any given type, kind or class of aeronautical use of the Airport if such action is necessary for the safe operation of the Airport or necessary to serve the civil aviation needs of the public.

"(3) The Sponsor will operate and maintain in a safe and serviceable condition the Airport and all facilities thereon and connected therewith which are necessary to serve the aeronautical users of the Airport other than facilities owned or controlled by the United States, and will not permit any activity thereon which would interfere with its use for airport purposes.

"(4) In addition, the Sponsor will not erect or permit the erection of any permanent structure or facility which would interfere materially with the use, operation, or future development of the Airport, in any portion of a runway approach area in which the Sponsor has acquired, or may hereafter acquire, property interests permitting it to so control the use made of the surface of the land.

"(5) . . . The Sponsor will not make or permit the making of any changes or alterations in the Airport or any of its facilities other than in conformity with the airport layout plan as so approved by the F.A.A., if such changes or alterations might adversely affect the safety, utility, or efficiency of the Airport.

"(6) Insofar as is within its power and to the extent reasonable, the Sponsor will take action to restrict the use of land adjacent to or in the immediate vicinity of the Airport to activities and purposes compatible with normal airport operations including landing and takeoff of aircraft."

The Grant Agreements in question also provided:

"2. The Sponsor shall:

"(a) begin accomplishment of the Project within Ninety (90) days after acceptance of this Offer or such longer time as may be prescribed by the F.A.A., with failure to do so constituting just cause for termination of the obligations of the United States hereunder by the F.A.A.;"

*    *    *    *    *    *

"8. In addition the Sponsor shall:

*    *    *    *    *    *

"(g) Carry out such sanctions and penalties for violation of the equal opportunity clause as may be imposed upon contractors and subcontractors by the F.A.A. and the Secretary of Labor pursuant to Part II. Subpart D of Executive Order No. 11246; and in the event that the sponsor fails or refuses to comply with its undertakings, the F.A.A. may cancel, terminate or suspend in whole or in part any contractual arrangement it may have with the sponsor, may refrain from extending any further assistance under any of its programs subject to Executive Order 11246 until satisfactory assurance of future compliance has been received from such applicant, or may refer the case to the Department of Justice for appropriate legal proceedings."

*    *    *    *    *    *

"14. If at any time it is determined by the F.A.A. that there is any outstanding right in or to the Airport property, other than those set forth in Part II, paragraphs 7(a), 7(b), and 7(c), the existence of which creates an undue risk of interference with the operation of the Airport or the performance of the covenants of this Part, the Sponsor will acquire, extinguish, or modify such right or claim of right in an manner acceptable to the F.A.A."

Plaintiffs claim that defendant DeKalb County knew of the existing bird hazard at DeKalb Peachtree Airport, in that such bird hazard had existed for a substantial period of time. Plaintiffs also claim that the existence of the birds attracted to the County's garbage dump created a substantial hazard to the safe operation of departing and arriving jet turbine aircraft. Based upon these allegations, plaintiffs contend that both the United States and DeKalb County were negligent in the operation and maintenance of the airport. Plaintiffs further allege that DeKalb County is liable for the maintenance of a public nuisance, and for breach of the Grant Agreements in failing to maintain the airport in an adequate and safe condition for the benefit of aeronautical users thereof and for the benefit of the public.

Counsel for the parties will supply the Georgia Supreme Court with copies of the

Joint Appendix filed in the United States Supreme Court, for use as an underlying record by all concerned.

## JOINT PROPOSED CERTIFIED QUESTIONS

1. In these particular cases, under Georgia law is DeKalb County immune from suit under a theory of negligence?

(a) In these particular cases, under Georgia law is DeKalb County immune from suit under a theory of negligence, if the negligence arose from the violation by DeKalb County of specific contractual and statutorily imposed duties?

2. In these particular cases, under Georgia law is DeKalb County immune from suit under a theory of nuisance?

(a) In these particular cases, under Georgia law is DeKalb County immune from suit under a theory of nuisance, if the nuisance was created in violation of specific contractual and statutorily imposed duties?

3. In these particular cases, under Georgia law may these plaintiffs maintain an action as third-party beneficiaries based upon the alleged breach of the contracts between DeKalb County and the Federal Aviation Administration, or is DeKalb County immune from such claims?

(a) In these particular cases, if under Georgia law DeKalb County is not immune from suit based upon allegations of third-party beneficiary status under the Grant Agreement, are the plaintiffs in these cases intended or incidental third-party beneficiaries of the Grant Agreement Covenants?

(b) If DeKalb County is not immune from suit in these particular cases under said contract theory and if these plaintiffs are intended third-party beneficiaries, will an action for personal injuries and property damage lie against DeKalb County where the damages arose from the alleged negligence of the County in carrying out or failing to carry out specific contractual and statutorily imposed duties?

(c) If DeKalb County is not immune from suit in these particular cases under said contract theory and if these plaintiffs are intended third-party beneficiaries, will an action for wrongful death lie against DeKalb County where those persons entitled to sue under the Georgia wrongful death statutes base their cases upon the alleged negligence of the County in carrying out or failing to carry out specific contractual and statutorily imposed duties?

(d) If DeKalb County is not immune from suit in these particular cases under said contract theory and if these plaintiffs are intended third-party beneficiaries, under Georgia law can those particular plaintiffs seeking recovery for wrongful death damages maintain such actions solely under a theory of breach of contract?