**Preston E. PERDUE and Patrick D. Grimes, Plaintiffs,**

v.

**J. C. PENNEY COMPANY, INC., Kenneth S. Axelson, William M. Batten, George S. Stewart, Christopher Kaliades, Catherine Morales, John Hook, Stuart W. Lyon, Andrew Tsanas, Charles L. Brown, Walter J. Neppl, Donald V. Seibert and Andrew Cumming, Defendants.**

**No. 78 Civ. 846 (KTD).**

United States District Court, S. D. New York.

May 24, 1979.

Julien, Schlesinger & Finz, P. C., New York City, for plaintiffs; Stuart A. Schlesinger, David Jaroslawicz, New York City, of counsel.

Weil, Gotshal & Manges, New York City, for defendants J.C. Penney Company, Inc., Donald V. Seibert, Walter J. Neppl, Charles L. Brown and Andrew Cumming; Peter Gruenberger, John R. Wing, Irwin H. Warren, Paul K. Milmed, New York City, of counsel.

Orans, Elsen, Polstein & Naftalis, New York City, for defendant Kenneth S. Axelson; Sheldon Elsen, Gary Greenberg, New York City, of counsel.

Andrew Lawler, New York City, for defendant George S. Stewart.

Maloney, Viviani & Higgins, New York City, for defendant Catherine Morales; Arthur Viviani, New York City, of counsel.

Rubin, Seidman & Dochter, New York City, for defendant John Hook; Irving Seidman, New York City, of counsel.

Warshaw, Burstein, Cohen, Schlesinger & Kuh, New York City, for defendant William M. Batten; Richard H. Kuh, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiffs Preston E. Perdue and Patrick D. Grimes have brought this diversity action against J.C. Penney Company, Inc., [hereinafter referred to as "J.C. Penney"] and various officers and employees of that company. Plaintiffs charge that they were wrongfully discharged from their employment with J.C. Penney and that such discharge constituted a prima facie tort for which they are entitled to recover.[1] They also assert that defendants intentionally inflicted mental distress upon plaintiffs by failing to protect them when a threat was made on their lives. Defendants Seibert, Neppl, Brown, Cumming, Axelson, Batten, Stewart, Hook and Morales have all moved to dismiss the complaint. They argue that under Texas law, which they claim is applicable, plaintiffs have failed to state a claim upon which relief can be granted.

The only questions for my consideration on this motion are whether Texas law governs the rights of the parties, and if so, whether the complaint is deficient thereunder. Because the choice of law question could not be determined from the allegations in the complaint, I requested that the parties submit supplementary affidavits relevant to the relative interests of New York and Texas in the controversy at bar. That has been done and the submissions disclose the following facts and controversies.

J.C. Penney maintains its corporate headquarters in New York City and has a number of regional offices throughout the country. During the period of time relevant to this complaint, Perdue and Grimes were employees of J.C. Penney working out of its Dallas, Texas office. Perdue was employed as the Supervising Auditor and/or Manager of Real Estate and Financial Services. Grimes was employed as a Senior Auditor and/or Supervising Auditor of Real Estate. Both plaintiffs were citizens and residents of Texas.

Beginning in 1968, J.C. Penney undertook various projects involving renovations, alterations and construction at its New York offices. Much of the work was performed by H.L. Lazar, Inc. [hereinafter referred to as "Lazar"] at J.C Penney's New York headquarter's building. In late 1975 and early 1976, an illegal bribery and kick back scheme was discovered between a J.C. Penney employee, Andrew Tsanas, and Lazar, the General Contractor. In April 1976, the

---

1. Plaintiffs were employees at will, and thus do not sue for breach of an employment contract.

Independent Audit Committee of the Board of Directors of J.C. Penney assumed responsibility for investigating the wrongdoing. Plaintiffs, in their capacity as internal auditors, were part of the investigative team. It is their assertion that the individual defendants herein were, in one way or another, involved in the construction scheme. Plaintiffs claim that when they discovered this wrongdoing, a cover-up was undertaken by defendants and all plaintiffs' efforts to complete their investigation were thwarted. On June 1, 1977, plaintiffs' employment was terminated. Plaintiffs assert that this termination was solely to perpetuate the alleged cover-up and had no legitimate purpose.

In April 1976, when the investigation was underway, Perdue allegedly received a threatening phone call at his home in Dallas. Plaintiffs' complaint charges that defendants failed to provide them with protection from the unidentified caller and did not permit them to seek assistance from public law enforcement agencies. No further elaboration of this claim is offered, however, plaintiffs do not deny defendants' version of what transpired. According to Loren Sullivan, a J.C. Penney employee in charge of its Security Department, Perdue called him from Dallas following the threatening call. Perdue asked Sullivan's advice regarding the feasibility of seeking public law enforcement assistance. Sullivan advised that that avenue of protection would probably not be adequate and suggested a private security agency be retained at J.C. Penney's expense. Perdue agreed and selected Stanley Smith Security, Inc. for whose services J.C. Penney was billed. Affidavit of Loren Sullivan, September 25, 1978.

Defendants' version of the events leading to the termination of plaintiffs' employment is, not surprisingly, at odds with that offered by plaintiffs. Because most of the assertions are not relevant to my decision on the choice of law question, I will not review them here. However, I do find it worth noting that plaintiffs do not deny that much of the information gathered by the Audit Committee concerning construction irregularities was turned over to the United States Attorney for the Eastern District of New York who was conducting a parallel investigation of the alleged corruption.[2] As a result of these combined efforts three former J.C. Penney employees were found to have engaged in wrongdoing and were convicted of criminal activity. Affidavits of Edward J. Nolan, September 27, 1978.

With this background, I turn to the choice of law question. There can be no question by this time that federal courts in diversity cases utilize the choice of law rules of the forum state to determine the law that governs a party's claims. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Rosenthal v. Warren*, 475 F.2d 438, 440 (2d Cir.), *cert. denied*, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973). In a tort case, New York conflict of law rules provide that the law of the state with the most substantial interest in the controversy shall apply. *Neumeir v. Kuehner*, 31 N.Y.2d 121, 127, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972); *Babcock v. Jackson*, 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). Defendants contend that in this case, where plaintiffs are seeking redress for prima facie tort and intentional infliction of mental distress, Texas is the state with the overriding interest in the controversy. According to defendants, plaintiffs were Texas employees who worked out of the Dallas office, received their salaries in Texas, and had their staff in Texas. It is undisputed that plaintiffs were at all relevant times citizens of Texas and, indeed, had lived there for years before this action arose. Moreover, plaintiffs' employment was terminated in Texas following a meeting there to discuss a "consulting proposal" whereby plaintiffs would be employed as indepen-

---

**2.** With regard to this Federal investigation, plaintiffs do make certain allusions to a potential legal conflict of interest. Because these suggestions are irrelevant to the issue at hand, I will not comment further thereon.

dent auditors under contract rather than as non-contractual employees of J.C. Penney.[3] It is this firing which plaintiffs claim to be wrongful, and defendants suggest that Texas has a substantial interest in such injuries to its citizens which occur within its borders. Finally, the threatening phone call was received in Texas where plaintiffs suffered the alleged mental distress. Defendants again urge that Texas law should govern the question whether one of its citizens may recover for mental distress inflicted in Texas.

Contrasted with these Texas contacts are the New York contacts delineated by plaintiffs. The construction which began the series of events leading to plaintiffs' firing took place in New York. Plaintiffs claim they were considered New York associates under the supervision of a New York supervisor. They also assert that they were paid under New York guidelines and that Perdue initially worked in New York. Of course, J.C. Penney has its corporate headquarters in New York and some of the defendants reside in this state.

Many of plaintiffs' claimed New York ties fall in the face of defense affidavits which plaintiffs fail to rebut. In the first place, it appears that Perdue's work in the New York headquarters was merely as a trainee for a period of three months. Affidavit of Charles L. Brown, September 28, 1978. Furthermore, the compensation which plaintiffs received was paid along company-wide guidelines because of their company-wide service function. It was apparently not unique to New York employees but rather an accounting procedure applicable to any employee who performed services which benefitted the company as a whole. Brown affidavit, ¶ 11.

In any event, merely counting contacts is not the key to a choice of law problem. Rather, it is necessary to look at a nature of the wrong alleged and the injury allegedly suffered to determine which state has the greatest interest in resolving the questions raised by the complaint. *See Matter of Crichton*, 20 N.Y.2d 124, 135 n.8, 281 N.Y.S.2d 811, 228 N.E.2d 799 (1967). In this case plaintiffs claim they were wrongfully discharged and that their reputations were injured as a result thereof. Clearly Texas has a greater interest than New York in determining whether such an injury suffered by one of its citizens will support a cause of action. *See generally Church of Scientology of California v. Green*, 354 F.Supp. 800 (S.D.N.Y.1973). Plaintiffs also claim to have endured mental anguish as a result of the receipt of a threatening phone call and lack of adequate protection. Once again it would seem that Texas has a more compelling concern with its citizens who suffer such injury in their place of residence than does New York. *See Nader v. General Motors Corp.*, 25 N.Y.2d 560, 307 N.Y.S.2d 647, 255 N.E.2d 765 (1975).

In concluding that Texas law should govern this complaint it is essential to observe that while the construction scheme in New York may have set the stage for the events which followed and that ultimately led to their termination, plaintiffs are not suing for the wrongs that occurred in New York (that is the bribery and self-dealing) but rather for the injury that they suffered when they were fired. It may be true that New York has an interest in preventing corporate officers from abusing their positions of trust in companies headquartered in New York,[4] Plaintiff's Memorandum at 11–12. However, it has less of an interest in seeing that two non-resident employees of the company be recompensed for the

---

**3.** There is some controversy as to the true nature of this proposal to employ plaintiffs as independent auditors. Plaintiffs charge that defendants first suggested the arrangement and importuned plaintiffs to commit it to writing. Defendants, on the other hand, urge that the proposal originated with plaintiffs who sought compensation far in excess of their earnings as J.C. Penney employees. I need not consider

the varied characterizations of the parties since they are of no relevance to the choice of law question. It is not disputed, however, that defendants rejected the proposal and ultimately fired plaintiffs.

**4.** Thus, if this were a derivative action, perhaps New York law would apply.

termination of their employment which took place in another state. In my view, Texas is the state with the paramount interest and its law should apply.

■ I thus turn to the question of whether Texas recognizes a cause of action for prima facie tort. That is, whether Texas will permit recovery where damage is intentionally inflicted upon another, without justification, by conduct which is otherwise lawful. *Ruza v. Ruza*, 286 App.Div. 767, 146 N.Y.S.2d 808 (1st Dep't. 1955).

■ Texas law provides that absent contractual relations an employer is free to discharge an employee regardless of cause. *Cactus Feeders, Inc. v. Wittler*, 509 S.W.2d 934, 937 (Tex.Civ.App.1974). Moreover, in that state an improper motive does not operate to make an otherwise lawful act unlawful. *Teas v. Republic National Bank*, 460 S.W.2d 233 (Tex.Civ.App.1970); *Dealey v. Dallas County Junior College District*, 434 S.W.2d 724 (Tex.Civ.App.1968); *Kingsbery v. Phillips Petroleum Company*, 315 S.W.2d 561 (Tex.Civ.App.1958). Thus, since plaintiffs were employees at will, J.C. Penney had a right to discharge them and defendants' allegedly wrongful purpose in so doing is of no moment.[5]

■ Plaintiffs' claim based upon the intentional infliction of emotional distress must also fail. Under Texas law a party may not recover for intentional infliction of emotional distress unless there is a resulting physical injury or the mental anguish results from another tort which is independently actionable. *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex.1967).

*See also Billings v. Atkinson*, 489 S.W.2d 858 (Tex.1973). In the latter case a plaintiff was entitled to recover damages for mental suffering where his right of privacy was violated. In Texas the violation of the right of privacy is considered an independent tort.

■ Plaintiffs do not appear to argue that the failure to provide public law enforcement protection to them gives rise to an independent tort. Rather, they urge that the claim for intentional infliction of mental distress stands by itself and that, in any event, since they have stated a claim in prima facie tort, that claim supports the claim for mental suffering. The very case plaintiffs rely on in support of their first assertion, *Billings, supra*, belies their position. As noted above, the Court in *Billings* held that damages for mental suffering might be recovered because the invasion of the right of privacy was an independently actionable tort. Plaintiffs' second assertion, of course, carries no weight in view of the fact that there is no doctrine of prima facie tort under Texas law.

Because plaintiff claims on Counts I and II may not be sustained, punitive damages based on those counts may, of course, not be awarded. Accordingly, for the reasons outlined above, defendants' motion to dismiss the complaint is granted.[6]

SO ORDERED.

---

**5.** Plaintiffs have cited no Texas cases to the contrary. In *Central Texas Clarklift v. Simmons*, 540 S.W.2d 745 (Tex.Civ.App.1976) the plaintiff sued a defendant who allegedly maliciously interfered with plaintiff's contract with *another*. The fact that wrongful interference with a contract may state a claim under Texas law in no way suggests that the termination of at-will employment becomes unlawful because of a wrongful motive. The other Texas authority cited by plaintiff, *Teague v. Stephens*, 564 S.W.2d 437 (Tex.Civ.App.1978), granted summary judgment to a defendant who denied that he intentionally caused the destruction of a will. I can perceive no connection between that case and the one at bar.

Plaintiffs' assessment of *Kingsbery v. Phillips Petroleum Co.*, 315 S.W.2d 561 (Tex.Civ.App. 1958) also misses the mark. While it may be unlawful for one party to interfere with the contract of another, absent justification, that case simply does not suggest that a similar justification is required where one cancels a contract which by its terms may be cancelled by either party. *Id.* at 576.

**6.** Although defendants Kaliades, Lyon and Tsanas have not joined in this motion, the within decision effectively disposes of the action as to them as well.