Ira Blake **PHILLIPS**, Plaintiff-Appellee,

v.

The **GOODYEAR TIRE & RUBBER COMPANY**, Defendant-Appellant.

No. 79–2011.

United States Court of Appeals, Fifth Circuit. Unit A

July 27, 1981.

Rehearing and Rehearing En Banc Denied Oct. 13, 1981.

Preston Shirley, Galveston, Tex., for defendant-appellant.

Kronzer, Abraham & Watkins, W. James Kronzer, Houston, Tex., for plaintiff-appellee.

Before BROWN, THORNBERRY and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

In this diversity case, Appellee Ira Blake Phillips sued his former employer, Appellant Goodyear Tire and Rubber Company (Goodyear) for wrongful discharge, contending that Goodyear terminated his employment in retaliation for Phillips' having given truthful deposition testimony in a federal trial. The jury found that Phillips' testimony was the sole reason for his discharge and awarded him $400,000 in actual damages. The district court entered judgment based upon the jury verdict. Concluding that neither Georgia nor Texas—the only two states whose substantive laws might govern this case—recognize a cause of action for retaliatory discharge in favor of an employee hired for an indefinite period, we reverse the judgment of the district court.

Phillips was employed by Goodyear in 1958 at Columbia, South Carolina. He worked for Goodyear at various locations in the United States until May, 1969, when he was promoted to the position of District Manager of the company in San Antonio, Texas. On August 1, 1971, Goodyear made Phillips District Manager in Houston, Texas. Shortly before June of 1973, Phillips was summoned to Goodyear's office in Atlanta, Georgia, where he was advised of his promotion to Assistant Region Manager-Re-

tail. In June of 1973, Phillips and his family moved to Atlanta, and Phillips began working in Goodyear's Atlanta office. The record clearly shows, and Phillips has consistently admitted, that he had no written contract of employment with Goodyear and that he was hired for an indefinite period.

During the time Phillips was employed at Goodyear's Atlanta office, the Texas Tire Company located in Houston brought an antitrust suit against Goodyear in the federal district court in Houston. In July and August of 1974, Phillips gave deposition testimony in connection with the antitrust suit. Approximately one-half of his deposition was taken in Houston. The deposition was then adjourned and was concluded in Atlanta in August of 1974. On December 1, 1975, Goodyear terminated Phillips' employment. Phillips subsequently moved from Atlanta to Texas, where he now resides.

On June 18, 1976, Phillips filed a diversity suit against Goodyear in federal district court in Texas, asserting that Goodyear wrongfully and maliciously discharged him in retaliation for giving truthful deposition testimony in the Texas Tire antitrust litigation that was harmful to Goodyear's interest. In response to Phillips' contentions, Goodyear denied that Phillips was fired because his testimony was harmful or because Phillips refused to perjure himself, arguing that other reasons, including Phillips' alleged misconduct and incompetency, provoked the discharge.

A jury trial spanning twenty-three days was held. Goodyear moved for a directed verdict after Phillips rested his case and again at the close of all of the evidence,

contending, inter alia, that neither Georgia nor Texas law recognized Phillips' asserted cause of action. The district court denied the motions. The court also overruled all of Goodyear's objections to the proposed jury charge and denied the questions and special instructions proffered by Goodyear. The district court charged the jury that Goodyear would be liable to Phillips for actual damages resulting from the discharge if the "real and only reason" for the discharge "result[ed] from something that [Phillips] was legally required to do, such as to the best of [his] ability providing testimony in a legal or administrative proceeding affecting [his] employer...."[1]

In response to the questions submitted to it, the jury found that "the real and only reason for [Phillips' discharge by Goodyear] was testimony he gave in the [Texas Tire antitrust] case," and that Phillips "would not have been [discharged] but for such testimony." However, it found that the discharge was not motivated by bad faith or ill will with specific intent to harm Phillips. The jury determined that the sum of $400,000[2] would fairly compensate Phillips for the injuries proximately caused by the discharge. No exemplary damages were awarded based upon the jury's finding that Goodyear did not act with malice toward Phillips in terminating his employment. The district judge denied Goodyear's motion for judgment notwithstanding the verdict and entered judgment against Goodyear for $400,000 plus interest from the date of judgment.

On appeal, Goodyear challenges the judgment against it on a number of grounds, including alleged insufficiency of

---

1. The record does not reveal whether the district court relied upon Georgia or Texas law in ruling that Phillips could recover against Goodyear if the jury found that the sole cause of the discharge was his testimony in the antitrust suit. However, the record indicates that the district court believed that both jurisdictions would recognize Phillips' asserted cause of action.

2. The jury originally found actual damages in the amount of "$300,000 plus court costs and lawyers' fees." After the district court instructed the jury that court costs and attorneys' fees were not proper elements of actual damages and that their verdict was therefore improper, the jury was sent back to deliberate further on the actual damages issue. In approximately five minutes, the jury returned and informed the court that their amended answer

the verdict to support the judgment,[3] error in the court's charge to the jury on damages, and impropriety of the jury's amended answer on the issue of actual damages. Goodyear's primary contention, however, is that, as an employee hired for an indefinite period, Phillips has no cause of action against his former employer, regardless of the motives underlying the discharge. Goodyear argues that Texas choice-of-law rules [4] dictate that Georgia substantive law governs the suit, and that Georgia law supplies Phillips with no cause of action. Alternatively, Goodyear contends that even if Texas substantive law applies, Texas would not recognize Phillips' asserted cause of action. Phillips argues for the application of Texas law, but contends that both Texas and Georgia would permit his recovery under the circumstances of this case.

For purposes of analyzing the issue whether Phillips has a cause of action, we view Phillips' contentions and the jury's findings in the light most favorable to him. Therefore, we assume without deciding that the sole reason for Phillips' termination was that he gave truthful testimony harmful to Goodyear's interests or that he refused to perjure himself. Because we conclude that neither Georgia nor Texas law supplies Phillips with a cause of action against his former employer arising from his discharge, we need not decide the choice-of-law issue. Likewise, because our conclusion that Phillips has no cause of action requires reversal of the judgment in toto, we have no occasion to resolve the remainder of the issues raised by Goodyear.

■ Like the majority of the states, Georgia and Texas follow the rule that when an employee is hired for an indefinite period, the employment relationship may be terminated at will by either party. Under this "at will" rule, the employer may, without liability, discharge the employee for a good reason, a bad reason, or no reason at all. See the recent, thorough Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith*, 93 Harv.L.Rev. 1816 (1980).

In Georgia, application of the at will rule is grounded in Ga.Code Ann. § 66–101, which specifically provides that "[a]n indefinite hiring may be terminated at will by either party." According to the Supreme Court of Georgia, "[t]he motives of the employer in discharging his employee at will are legally immaterial." *Georgia Power Co. v. Busbin*, 242 Ga. 612, 250 S.E.2d 442, 445 (1978). The Georgia courts have uniformly followed the at will rule, holding that an employee at will has no cause of action, whether characterized as sounding in tort or in contract, against his employer for an alleged wrongful discharge. *See, e. g., id.* at 444–45; *Runyan v. Economics Laboratory, Inc.*, 147 Ga.App. 53, 248 S.E.2d 44 (1978); *McElroy v. Wilson*, 143 Ga.App. 893, 240 S.E.2d 155 (1977), *cert. denied*, 435 U.S. 931, 98 S.Ct. 1506, 55 L.Ed.2d 528 (1978); *Hill v. Delta Air Lines, Inc.*, 143 Ga.App. 103, 237 S.E.2d 597 (1977); *Ely v. Stratoflex, Inc.*, 132 Ga.App. 569, 208 S.E.2d 583 (1974).

In Texas, the at will rule flows from common law rather than statute, but the content of the rule is the same as in Georgia. Under Texas law, an employee at will may be discharged by the employer with or

---

to the question concerning actual damages was $400,000.

3. The jury found that "the real and only reason for [Phillips' discharge by Goodyear] was testimony he gave in the [Texas Tire antitrust] case." Goodyear contends that it introduced evidence at the trial tending to prove that one of the reasons for Phillips' discharge was that his deposition testimony in the antitrust suit revealed his ignorance of important company marketing policies and procedures. Goodyear contends that because of the broad wording of the special issue submitted to the jury concern-

ing causation, the jury could have answered that Phillips was fired solely for his testimony in the antitrust case even if it believed that he was fired solely because his testimony demonstrated his lack of knowledge and not because he refused to perjure himself or gave truthful testimony harmful to Goodyear's interests.

4. A federal court sitting in diversity must follow the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941).

without cause and regardless of the employer's motive without liability. *See, e. g., St. Louis Southwestern Railway Co. v. Griffin,* 106 Tex. 477, 171 S.W. 703 (1914); *East Line & R. R. R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99 (1888); *United Services Auto Ass'n v. Tull,* 571 S.W.2d 551 (Tex.Civ.App.—San Antonio 1978, writ ref'd n. r. e.); *Cactus Feeders, Inc. v. Wittler,* 509 S.W.2d 934 (Tex.Civ.App.—Amarillo 1974, no writ); *NHA, Inc. v. Jones,* 500 S.W.2d 940 (Tex. Civ.App.—Ft. Worth 1973, writ ref'd n. r. e.); *Magnolia Petroleum Co. v. Dubois,* 81 S.W.2d 157 (Tex.Civ.App.—Austin 1935, writ ref'd); 38 Tex.Jur.2d *Master and Servant* § 12 (1962). *See also Perdue v. J. C. Penney Co.,* 470 F.Supp. 1234 (S.D.N.Y. 1979); *Bowen v. Wohl Shoe Co.,* 389 F.Supp. 572 (S.D.Tex.1975).

▮ Phillips contends that neither Georgia nor Texas has decided a case in which an employee, as we are assuming without deciding in this case, was discharged for refusing to perjure himself or for giving truthful trial testimony. Thus, Phillips asserts that neither Georgia nor Texas law forecloses recovery under the assumed circumstances of this case. He argues that, if confronted with these facts, both states would adopt an "emerging exception" to the at will rule designed to protect employees who are discharged in contravention of an important public policy of the state. This "public policy" exception to the at will rule has been adopted, in one form or another, by a small but ever increasing minority of the states. *See Note, supra,* 93 Harv. L.Rev. at 1816–24. Phillips argues that in light of the strong state and federal public policies [5] in favor of protecting witnesses who are called upon to testify truthfully in court and in favor of protecting the integrity of the judicial system by encouraging complete and honest testimony, both Georgia and Texas would recognize the "public policy" exception and allow recovery in his case.

After carefully surveying the Georgia and Texas cases in this area, we agree with Phillips that there is no reported case in either jurisdiction which stands on all fours with this one. In the absence of squarely controlling precedent, our task is to predict whether the Supreme Courts of Georgia and Texas, if confronted with these facts, would adopt a "public policy" exception to the at will rule applicable in this case. *See Nobs Chemical, U. S. A., Inc. v. Koppers Co.,* 616 F.2d 212 (5th Cir. 1980); *Green v. Amerada-Hess Corp.,* 612 F.2d 212, 214 (5th Cir.), *cert. denied,* 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980).

In our view, there is no reasonable basis in either Georgia or Texas law for a predic-

---

**5.** Phillips argues for application of a very limited version of the "public policy" exception. He asserts that the exception should extend only to those cases in which a state or federal statute, while not specifically creating a private cause of action in favor of the discharged employee, prohibits the employer's retaliatory conduct. Under this view, employees who have a statutory or common law right to engage in certain conduct would not be protected against discharge in retaliation for engaging in that conduct unless a statutory prohibition existed against interference with the employee's exercise of the right. Phillips contends that two statutes prohibited Goodyear's conduct, 18 U.S.C. § 1503 and Tex.Penal Code Ann. title 8, § 36.06(a).

18 U.S.C. § 1503 imposes criminal penalties on anyone who:

[c]orruptly ... endeavors to influence, intimidate, or impede any witness, in any court of the United States ... in the discharge of his duty, or injures any party or witness in his person or property on account of his attend-

ing or having attended such court ... or on account of his testifying or having testified to any matter pending therein, ... or by any threatening letter or communication, influences, ... or endeavors to influence, ... the due administration of justice....

Tex.Penal Code Ann. § 36.06(a) provides that any person commits a crime if he:

[i]ntentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service of another as a public servant, witness, or informant.

Phillips does not contend that either of these statutes creates in his favor a private right of action against his former employer. *See Odell v. Humble Oil & Ref. Co.,* 201 F.2d 123 (10th Cir.), *cert. denied,* 345 U.S. 941, 73 S.Ct. 833, 97 L.Ed. 1367 (1953) (refusing to recognize an implied private right of action under 18 U.S.C. § 1503). Phillips cites the statutes only to support his claim that Goodyear's conduct in discharging him was in violation of public policy.

tion that either state would adopt the "public policy" exception to the at will rule still recognized in only a small minority of states. The courts of Georgia and Texas have consistently held to the at will doctrine. We are unable to perceive the slightest indication of a shift toward recognition of any exception to the at will rule. Indeed, the intermediate appellate courts of each state have expressly refused to recognize exceptions to the at will rule when faced with challenges to the rule that are analogous, although not identical, to that urged by Phillips. *See Goodroe v. Georgia Power Co.*, 148 Ga.App. 193, 251 S.E.2d 51 (1978) (refusing to recognize exception to at will rule even though employee alleged he was fired "because he was about to uncover criminal activities" of a company employee); *West v. First National Bank*, 145 Ga. App. 808, 245 S.E.2d 46 (1978) (at will rule followed though employee alleged she was fired for declaring bankruptcy); *Watson v. Zep Manufacturing Co.*, 582 S.W.2d 178 (Tex.Civ.App.—Dallas 1979, writ ref'd n. r. e.) (rejecting the argument that Texas public policy requires discharge be based on

cause and stating that decision to alter the at will rule must be left to legislature); *Southwestern Bell Telephone Co. v. Dixon*, 575 S.W.2d 596, 601–02 (Tex.Civ.App.—San Antonio 1979), *writ dism'd w. o. j.*, 607 S.W.2d 240 (Tex.1980) (at will rule followed though firing was allegedly based on employee's complaints of company wrongdoing, kickbacks, and improper vouchering and political contributions).[6]

We are mindful of the strong public policy in favor of protecting those who fulfill their duty to testify truthfully in court proceedings. Moreover, we are cognizant of the possibility that these facts present a more compelling case for recognition of the "public policy" exception than those which the Georgia and Texas courts have confronted. However, we also realize that the at will rule is itself grounded in important, although arguably outmoded, considerations of public policy.

In *Green v. Amerada-Hess Corp.*, 612 F.2d 212 (5th Cir.), *cert. denied*, 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980), we recently faced a similar problem.

---

**6.** Contrary to Phillips' assertion, *K. W. S. Manufacturing Co. v. McMahon*, 565 S.W.2d 368 (Tex.Civ.App.—Waco 1978, writ ref'd n. r. e.), and *Mitchell v. C. C. Sanitation Co.*, 430 S.W.2d 933 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.), do not support his argument that the Texas courts have expressed a willingness to embrace an exception to the at will rule.

In *Mitchell*, an at will employee alleged that his former employer had obtained his signed release from tort liability by threatening to discharge him if he refused to sign. *Mitchell* in no way limits the operation of the at will rule. It merely stands for the proposition that "even where the right of an employer to discharge an employee is unquestioned," *id.* at 938, an employer's threat to discharge an employee for failure to sign a release may constitute duress or coercion voiding the release.

Nor is *K. W. S. Manufacturing* any aid to Phillips. In that case, the plaintiff alleged that the defendants had promised him 5% of the stock of K. W. S. Manufacturing and employment for an indefinite period of time in return for his furnishing time, labor and materials to the corporation. The plaintiff fulfilled his promise, but the defendants refused to give the plaintiff 5% of the stock of the company. When he employed an attorney and threatened to file suit to recover his stock, the defendants

terminated his employment. The plaintiff sued for actionable fraud and for wrongful termination of the employment agreement. The jury found in favor of the plaintiff on both theories, awarding him the value of 5% of the corporate stock plus punitive damages on the fraud theory, and actual and punitive damages on the wrongful termination theory. The Court of Civil Appeals affirmed the award of actual and punitive damages for wrongful discharge, holding that the termination was both a breach of contract and a tort authorizing the award of punitive damages. Phillips asserts that *K. W. S.* stands for the proposition that discharge of an at will employee is actionable when the termination results from the employee's use of judicial process to assert a valid claim. We disagree. A close reading of *K. W. S.* reveals that the court did not carve out an exception to the at will rule in that case. Indeed, the court's opinion nowhere mentions the at will rule. The simple explanation for this omission is that while the defendants attacked the plaintiff's judgment on the wrongful discharge theory on several grounds, they did not raise the argument that the at will rule barred the award. Since the effect of the at will rule was neither raised nor discussed in *K. W. S., K. W. S.* does not supply a precedent for a departure from the rule.

There, the plaintiff employee brought a Mississippi diversity suit against his former employer claiming that he was discharged in retaliation for pursuing his rights under Mississippi's workmen's compensation statute. Although the Mississippi courts had not specifically decided the question whether an employer might be liable for discharging an employee in retaliation for pressing his rights under the workmen's compensation law, the Mississippi cases made it clear that that state followed the general at will rule. Noting the "conflicting nature of existing precedents" concerning recognition of a cause of action for retaliatory discharge, we declined to carve out an exception to the at will rule for Mississippi, noting that "it is not our province as a federal appellate court to fashion for [a state] what we are certain many would say was a wise and progressive social policy." *Id.* at 214, quoting *Loucks v. Star City Glass Co.*, 551 F.2d 745, 746 (7th Cir. 1977). In our view, the reasoning of *Green* controls the disposition of this case. While the "public policy" exception may well be "wise and progressive social policy," recognition of our role as a federal court sitting in diversity precludes us from creating a "public policy" exception to the at will rule in the absence of any indication that the courts of Georgia or Texas might recognize such an exception. *See also Percival v. General Motors Corp.*, 539 F.2d 1126 (8th Cir. 1976) (declining to predict that Michigan would recognize cause of action for retaliatory discharge in view of state's adherence to at will rule and strong policy arguments for and against recognition of exception).

In view of our holding that Phillips has no cause of action under either Georgia or Texas law, it follows that the district court erred by refusing to grant Goodyear's motion for a directed verdict. We accordingly reverse the district court's judgment in favor of Phillips and render judgment in favor of Goodyear.

REVERSED AND RENDERED.

JOHN R. BROWN, Circuit Judge, dissenting:

I respectfully dissent, but not because the Court's opinion incorrectly states the current law of Georgia. Rather, I do so because we do not take advantage of the opportunity by available certification[1] to get firsthand authoritative word from the Supreme Court of Georgia, not on what the decided precedents reveal, but on what Georgia would now hold on this new and appealing situation.

The Court's opinion proceeds expressly on the assumption "that the sole reason for Phillips' termination was that he gave truthful testimony harmful to Goodyear's interests or that he refused to perjure himself" (p. 1054). Considering that the testimony was in a Federal case in a Federal Court and the alleged retaliatory action by Goodyear was in violation of the express prohibitions of 18 U.S.C. § 1503 as well as Texas Penal Code § 36.06(a) (in which state part of the testimony was given)[2] I cannot believe that, in these enlightened times, the Supreme Court of Georgia would consider that the Georgia code (§ 66–101) or its prior decisions would close the book for all time on this new but stark, shocking claim.

I think fairness to the parties, indeed fairness to Georgia, requires that Georgia now determine whether it would adopt an "emerging exception" and thus join the "— small but ever increasing minority of the States". (p. 1055).

---

1. The utility of this remarkable device has often been extolled and the Georgia Supreme Court has willingly accepted and answered a number of certifications from this Court. *See generally In re McClintock [McClintock v. General Motors Acceptance Corp.]*, 558 F.2d 732, 733 nn.2, 3, 4 (5th Cir. 1977); *Wansor v. Hantscho Co , Inc.*, 570 F.2d 1202, 1208 n. 9 (5th Cir. 1978) *certification answer*, 580 F.2d 726 (5th Cir. 1978); *McClintock v. General Motors Acceptance Corp.*, 571 F.2d 317 (5th Cir. 1978) (certification answer); *Miree v. United States*, 565 F.2d 1354 *certification answer*, 588 F.2d 453 (5th Cir. 1978); *Ins. Co. of North America v. Meyer*, 431 F.2d 209; *Southern Guaranty Ins. Co. v. Pearce*, 607 F.2d 146 (5th Cir. 1979) *certification answer*, 625 F.2d 546 (5th Cir. 1980); *Aretz v. United States*, 635 F.2d 485 (5th Cir. 1981).

2. See note 5 Court's opinion.

Although at one time our *Erie* quest might have been satisfied by ascertaining, as the Court puts it "that there is no reported case—which stands on all fours with this one" and an absence of "squarely controlling precedent" (p. 1055) we no longer need depend on predictability or our prediction. *See, Lehman Bros. v. Schein*, 1974, 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215.

We have the answer at hand. We have it by the simple certification, and an authoritative answer would be forthcoming either by the Supreme Courts answer, pro or con, or by it declining to accept certification.

The need for a fresh, not "arguably outmoded" answer cannot be better said than in this Court's own words:

> "We are mindful of the strong public policy in favor of protecting those who fulfill their duty to testify truthfully in court proceedings. Moreover, we are cognizant of the possibility that these facts present a more compelling case for recognition of the "public policy" exception than those which the Georgia . . . courts have confronted. However we also realize that the at will rule is itself grounded in important, although *arguably outmoded*, considerations of public policy." (emphasis added).

I would certify this important question to the Supreme Court of Georgia. To this Court's failure to use this remarkable device I dissent.[3]

---

**3.** Since of all the six States of the Fifth Circuit, Texas alone has no certification procedure, I concur in the Court's opinion as to the Texas claim.