**Ira Blake PHILLIPS, Plaintiff-Appellee,**

v.

**The GOODYEAR TIRE & RUBBER COMPANY, Defendant-Appellant.**

**No. 79–2011.**

United States Court of Appeals, Fifth Circuit.*
Unit A

March 31, 1982.

Preston Shirley, Galveston, Tex., for defendant-appellant.

Kronzer, Abraham & Watkins, W. James Kronzer, Houston, Tex., for plaintiff-appellee.

Before BROWN, THORNBERRY and WILLIAMS, Circuit Judges.

PER CURIAM:

IT IS ORDERED that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby DENIED.

A member of this Administrative Unit in active service having requested a poll on the reconsideration of this cause en banc, and a majority of the judges in active service of said Administrative Unit not having voted in favor of it, rehearing en banc is DENIED.

Before BROWN, CHARLES CLARK, GEE, RUBIN, GARZA, REAVLEY, POLITZ, RANDALL, TATE, SAM D. JOHNSON, and WILLIAMS, Circuit Judges.**

---

** Due to his death on December 23, 1981, Judge Ainsworth did not participate in this decision.

JOHN R. BROWN, Circuit Judge, with whom TATE, Circuit Judge, joins, dissenting:

I dissent to the failure of this Court to grant rehearing en banc to thereby certify the underlying question of Georgia law to the Supreme Court of Georgia. To the reasons advanced in my dissent to the panel opinion, *Phillips v. Goodyear Tire and Rubber Co.*, 651 F.2d 1051, 1057 (5th Cir. 1981) I would add these comments.

I would emphasize again that certification is needed to get "firsthand authoritative word from the Supreme Court of Georgia, not on what the decided precedents reveal, but on what Georgia would now hold on this new and appealing situation", 651 F.2d 1051.

The panel opinion is based expressly on the assumption "that the sole reason for Phillips' termination was that he gave truthful testimony harmful to Goodyear's interest or that he refused to perjure himself." *Id.* at 1054. Adding the fact that the testimony was given in a Federal Court and the retaliatory action would be in violation of the express prohibitions of 18 U.S.C. § 1503, this led me to conclude:

I cannot believe that, in these enlightened times, the Supreme Court of Georgia would consider that the Georgia Code (§ 66–101) or its prior decisions would close the book for all time on this new but stark, shocking claim.

Judge Garwood did not participate in this decision.

1. Though the panel was speaking of both Texas and Georgia, Texas can no longer be considered since it has no certification procedure. *See* footnote 3, to the dissent, Id. page 1058.

2. The Supreme Court in *Lehman Bros. v. Schein*, 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215, note 6 stated:
The Fifth Circuit's willingness to certify is in part a product of frequent state court repudiation of its interpretations of state law. See the cases summarized in *United Services Life Ins. Co. v. Delaney*, 328 F.2d 483, 486–487 (CA5 1964) (Brown, C. J., concurring).

3. The utility of this remarkable device has often been extolled and the Georgia Supreme Court has willingly accepted and answered a number of certifications from this Court.

The panel itself recognized that the question was whether Georgia,[1] if confronted with these facts, "would adopt an 'emerging exception' to the at will rule designed to protect employees who are discharged in contravention of an important public policy of the state...". The panel went on to state... " '[T]his public policy' exception to the at will rule has been adopted, in one form or another, by a small but ever increasing minority of the states."

The panel fashioned its role in these terms:

In the absence of squarely controlled precedent, our task is to predict whether the Supreme Court of Georgia ..., if confronted with these facts, would adopt a "public policy" exception to the at will rule applicable in this case.

*Id.* at 1055.

But the important thing now is that such prediction—with all of its uncertainties, with the great ever present likelihood that it will turn out to be incorrect[2], is no longer necessary since by certification to the Supreme Court of Georgia, we can ascertain authoritatively and finally not only what the law *was* but what the law on this new problem *is.* The Georgia Supreme Court has willingly accepted and answered a number of certifications from this Court.[3]

The Supreme Court has used the certification procedure a number of times.[4]

See generally In re McClintock [*McClintock v. General Motors Acceptance Corp.*], 558 F.2d 732, 733 nn. 2, 3, 4 (5th Cir. 1977); *Wansor v. Hantscho Co., Inc.*, 570 F.2d 1202, 1208 n. 9 (5th Cir. 1978) *certification answer*, 580 F.2d 726 (5th Cir. 1978); *McClintock v. General Motors Acceptance Corp.*, 571 F.2d 317 (5th Cir. 1978) (certification answer); *Miree v. United States*, 565 F.2d 1354 *certification answer*, 588 F.2d 453 (5th Cir. 1978); *Ins. Co. of North America v. Meyer*, 565 F.2d 1357 (5th Cir. 1978); *Southern Guaranty Ins. Co. v. Pearce*, 607 F.2d 146 (5th Cir. 1979) *certification answer*, 625 F.2d 546 (5th Cir. 1980); *Aretz v. United States*, 635 F.2d 485 (5th Cir. 1981).

4. *Clay v. Sun Ins. Office, Ltd.*, 1960, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170, on certification upon remand, Fla., 1961, 133 So.2d 735, on receipt of answers to certification, 5

Where technically certification was not available, that court ordered the equivalent—stay of further Federal Court proceedings pending determination in a state declaratory action. *W. S. Ranch Company v. Kaiser Steel Corporation*, 388 F.2d 257 (10th Cir. 1967), *reversed*, 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835.[5] And the Fifth Circuit has used this device very effectively, so much so that prior to the split of the Fifth Circuit into the Fifth and Eleventh Circuits on October 1, 1981, all but one of the six states had adopted either by constitutional amendment, statute or court rule a certification procedure. *See* J. R. Brown, C. J. *Certification—Federalism In Action*, 7 Cumberland Law Review 455 (1977).

Indeed, after extensive majority and dissenting opinions of the panel, this Court *en banc* ordered certification of the two critical legal issues—duty and proximate cause—to the Supreme Court of Georgia. The majority of the panel, discussing extensively Georgia precedents, concluded in *Aretz v. United States*, 604 F.2d 417 (5th Cir. 1979) that the District Court, consistent with Georgia law, could conclude that the United States owed a legal duty to the employees of its independent contractor on classification of the illuminant and to inform the contractor of the change in classification (page 431.) The Court also found not clearly erroneous the trial court's conclusion that failure to communicate promptly to the contractor the change in classification was a contributing proximate cause. The dissent declared that the duty imposed is not found

in existing Georgia law nor would it support the finding of proximate cause. The Court en banc thereafter certified two questions to the Supreme Court of Georgia, *Aretz v. United States*, 635 F.2d 485 (5th Cir. 1981). Unlike the panel here which found that "there is no reported case— which stands on all fours with this one" and an absence of "squarely controlling precedent" (p. 1055), the Supreme Court of Georgia thereafter answered the questions certified, *United States v. Aretz*, 248 Ga. 19, 280 S.E.2d 345 (1981), in effect agreeing with the conclusions of the panel majority opinion. This Court, *en banc*, then having been authoritatively advised of, not just what the law of Georgia was, not just what the law of Georgia had held, but what the law of Georgia now *is*, adopting the conclusions of the Georgia Supreme Court, reinstated the panel decision affirming the District Court. *Aretz v. United States*, 660 F.2d 531 (5th Cir. 1981) (*en banc*).

The Supreme Court of Georgia, in all of the cases certified to it (see note 3 supra) and now spectacularly in *Aretz* has demonstrated both its willingness and its constitutional ability to give an authoritative answer to the question of what *is* the law of Georgia.

But for Georgia to express its views in a meaningful and effective way as to the parties in an existing controversy, it must first be asked.

Phillips by his petition for rehearing urges this Court to do just that and certify

---

Cir., 1963, 319 F.2d 505, rev'd, 1964, 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229.

In addition to *Clay*, the other two cases are *Aldrich v. Aldrich*, 1963, 375 U.S. 249, 84 S.Ct. 305, 11 L.Ed.2d 304, and *Dresner v. City of Tallahassee*, 1963, 375 U.S. 136, 84 S.Ct. 235, 11 L.Ed.2d 208.

**5.** On petition for rehearing in the Tenth Circuit, Kaiser sought a stay pending determination of a recently filed New Mexico State Court declaratory action. To this Brown, Circuit Judge, sitting by designation, dissenting, discussed, 388 F.2d 262–267, at length the success which the Fifth Circuit had achieved on certification. The Supreme Court reversed and ordered that the Tenth Circuit stay proceedings pending determination by the New Mexico Courts.

The Supreme Court of New Mexico in the appeal from the declaratory judgment proceeding, *Kaiser Steel Corporation v. W. S. Ranch Co.*, 81 N.M. 414, 467 P.2d 986 (1970), in effect reversed the Tenth Circuit holding. Expressing its highest esteem that would make it "hesitate to take issue with its [10th Circuit's] very thoughtful and erudite opinion, because of the importance of the issue to this State, and our complete confidence in our conclusion, the Court held it "must respectfully disagree with the holding therein."

This proved the wisdom of the Supreme Court's reversal that where state facilities are available, questions of important state public policy ought to be determined by the State Court, not by an even well-informed, conscientiously held judgment of a Federal Court.

the question to the Supreme Court of Georgia. More significantly, the panel majority recognizes (i) the existence of a strong public policy protecting persons who testify truthfully and (ii) an awareness that the facts of our case for adoption of such a public policy exception have not heretofore been confronted by Georgia.

No matter how certain is the past, the presence of these two great possibilities makes it still, at best, an educated guess as to what Georgia would now do with this appealing situation.

I cannot improve on the conclusion of my panel dissent:

> The need for a fresh, not "arguably outmoded" answer cannot be better said than in this Court's own words:

> > "We are mindful of the strong public policy in favor of protecting those who fulfill their duty to testify truthfully in court proceedings. Moreover, we are cognizant of the possibility that these facts present a more compelling case for recognition of the "public policy" exception than those which the Georgia ... courts have confronted. However we also realize that the at will rule is itself grounded in important, although *arguably outmoded*, considerations of public policy." (emphasis added).

Georgia is ready and able. This important question of what the law of Georgia now *is* should be certified to the Supreme Court of Georgia. To this Court's failure to use this remarkable device, I dissent.